**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Regina Lynn Villone,<br><br>        Plaintiff,<br><br>vs.<br><br>United Parcel Services, Inc.,<br><br>        Defendant. | No. CV-09-8213-PHX-LOA<br><br>**ORDER** |

        This matter arises on Defendant United Parcel Services, Inc.'s ("Defendant" or "UPS") Motion for Summary Judgment pursuant to Fed.R.Civ.P. ("Rule") 56. (Doc. 51) *Pro se* Plaintiff Regina Lynn Villone ("Plaintiff") opposes the Motion. (Doc. 58) UPS filed a Reply. (Doc. 61) All parties have consented in writing to magistrate-judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1). (Docs. 7, 15) After considering the briefing, and the relevant law, the Court concludes that UPS is entitled to summary judgment as a matter of law.

**I. Factual Background**

        Plaintiff's Second Amended Complaint asserts two claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*: discrimination and retaliation. (Doc. 32) Defendant argues that both claims fail because Plaintiff was not a qualified individual with a disability during her employment with UPS. Thus, she was not entitled to ADA protection. Defendant alternatively argues that, even if Plaintiff was qualified individual, her claims lack merit. Plaintiff disputes Defendant's assertions.

**A. Plaintiff's Employment with UPS and her 2006 Injury**

UPS is in the business of delivering packages to residences and businesses. Plaintiff was hired by UPS in January 1986. (DSOF ¶ 5) Plaintiff's current position with UPS is a Service Provider (a/k/a package car "driver"). (DSOF ¶ 6) As a service provider, Plaintiff drives a large UPS package car and delivers packages to businesses and residences in Northern Arizona. (DSOF ¶ 7) The job of service provider is physically demanding, and requires the ability to stand, sit, bend, stoop, crouch, squat, and move up to 9.5 hours per day, five days a week. (DSOF ¶ 8, Exh. 1 at 34-36) The essential job functions of a service provider also require lifting up to 70 pounds unassisted and up to 150 pounds with assistance, and lifting packages above shoulder height. Plaintiff admits she engages in these activities as part of her job. (*Id*.; Exhs. 1 at 34-36)

On March 30, 2006, Plaintiff had rotator cuff surgery on her left shoulder. (DSOF ¶ 9, Exh. 5) On September 27, 2006, her surgeon and treating physician, Dr. Timothy Bonatus, released her to return to work, beginning October 2, 2006. (DSOF ¶ 10, Exh. 6) To prevent recurring and future injuries, Dr. Bonatus made the following "recommendations": no lifting greater than 40 pounds overhead; and no working over 9.5 hours per day or more than three days per week. He also recommended that Plaintiff drive only automatic power-steering vehicles. (*Id*., Exh. 6) Because these limitations rendered Plaintiff unable to perform the essential job functions, UPS determined that she was unfit to return to work as a package driver. After Dr. Bonatus confirmed that his "recommendations" were restrictions, as opposed to simply suggestions, on November 1, 2006, UPS took Plaintiff out of service because she could not perform the essential functions of her job. (DSOF ¶ 11, Exh. 7)

**B. Plaintiff's Discharge from UPS in December 2006**

On December 8, 2006, Plaintiff obtained a note from her primary care physician, Dr. George Anderson, stating that Plaintiff was "able to return to full work status without limitation, restrictions, and without disability." (DSOF ¶ 12, Exh. 8) Based on the discrepancies between Dr. Bonatus' and Dr. Anderson's recommendations, UPS - acting under the collective bargaining agreement - required Plaintiff to be evaluated by a company doctor before being

placed back in service. On December 13, 2006, Plaintiff saw Dr. Bonnie Goodman for a "fitness for duty examination." However, Dr. Goodman did not reach a determination regarding Plaintiff's fitness for duty because Plaintiff failed to provide Dr. Goodman with any medical records, or a UPS job description with the essential functions of her job. (DSOF ¶ 13, Exhs. 9-10) Dr. Goodman did, however, indicate that Plaintiff should not drive any commercial vehicles. (*Id.*)  Plaintiff also failed to take a functional capacity examination. (*Id.*) In a December 20, 2006 memo, Dr. Goodman noted that Plaintiff "has refused to schedule or keep an appointment for Functional Evaluation at Arizona Performance Institute - I would like to be able to help this individual return to her normal job activities but she is not cooperating. . . ." (DSOF ¶ 14, Exh. 9)  Based on Plaintiff's failure to disclose the truth about her medical condition to Dr. Anderson, UPS terminated her employment for alleged dishonesty under the collective bargaining agreement. (DSOF ¶ 15, Exh. 11)

### C. Plaintiff's December 2006 EEOC Charge and Labor Arbitration

On December 21, 2006, Plaintiff filed a charge of discrimination with the EEOC. (DSOF  ¶ 16, Exh. 2)  Plaintiff alleged she was able to perform the essential functions of her job (*Id.*)  She further alleged that she was removed from service in retaliation for filing a prior EEOC charge. (*Id.*) The December 21, 2006 charge was dismissed, and on June 26, 2007, Plaintiff was issued a notice of right to sue.  (DSOF ¶ 17, Exh. 3)  Plaintiff did not file a lawsuit based on that charge.

In addition to filing an EEOC charge, Plaintiff challenged her discharge by filing a labor grievance, which proceeded to arbitration. (DSOF ¶ 18, doc. 32)  In his December 31, 2007 decision, the arbitrator found that, because Defendant had "failed to prove that [Plaintiff] engaged in dishonest conduct," Plaintiff had not been terminated for just cause under the collective bargaining agreement. (DSOF ¶ 19, Exh. 11 at 12)  The arbitrator ordered UPS to "reinstate [Plaintiff] to her former position upon satisfactory completion of a fitness for duty examination releasing her to work without medical restriction." (*Id.*)  The arbitrator also ordered the parties to determine what other remedial relief, including back pay, would restore Plaintiff to the *status quo ante*. (*Id.*)

- 3 -

On January 23, 2008, Dr. Peter Vasquez conducted a "return-to-work" examination of Plaintiff. Dr. Vasquez imposed a 40-pound lifting restriction, which would have rendered Plaintiff unable to perform the essential functions of her job. (DSOF ¶ 20, Exhs. 12, 13) UPS, proceeding under the collective bargaining agreement, required Plaintiff to be evaluated by a neutral doctor. (DSOF ¶ 21) UPS commenced efforts to engage Plaintiff in the interactive process to determine whether an accommodation was possible. On March 11, 2008, UPS sent Plaintiff a letter requesting information about her medical condition in order to evaluate potential accommodation. (DSOF ¶ 22, Exh. 15) Although Plaintiff acknowledges that the first step in the ADA process is for UPS to gather medical information, Plaintiff did not respond. (DSOF ¶ 23, Exh. 1 at 20-21) On March 27, 2008, UPS sent Plaintiff another letter attempting to engage her in the interactive process. (DSOF ¶ 24, Exh. 16) Plaintiff testified that she did not ask UPS for an accommodation in 2008. (Doc. 52-2, Exh. 1 at 22-23) Plaintiff responded to UPS's letters on April 6, 2008 with a letter, indicating that she did not want to engage in the interactive process. (DSOF ¶ 25, Exh. 17) In that letter, Plaintiff rejected UPS's attempts to gather information about her medical condition, and demanded that UPS "heed to the fact that I am not disabled or have (sic) ever been." (*Id*.) In a letter dated April 7, 2008 letter, UPS acknowledged Plaintiff's request to withdraw her request for job-related accommodation. (DSOF ¶ 27, Exh. 18) Despite maintaining that she was not disabled, and terminating the interactive process, Plaintiff filed an EEOC charged on March 4, 2008, accusing UPS of failing to engage her in the interactive process to identify reasonable accommodations for her lifting restriction. (DSOF ¶ 28, Exh. 19) That charge, which was dismissed on September 14, 2009, is the basis for the pending lawsuit. (DSOF ¶ 29, Exh. 20)

### D.  Plaintiff's Return to Work

UPS continued working with the Union to identify a neutral doctor who could evaluate Plaintiff. (DSOF ¶ 30) On December 16, 2008, Plaintiff agreed to undergo a functional capacity examination, which she passed. (DSOF ¶ 31, Exh. 22) Plaintiff was reinstated on January 16, 2009. (Doc. 32) Following her reinstatement, UPS and the Union reached a settlement pursuant to which Plaintiff was paid backpay and benefits for the time she was out

of service. (DSOF ¶ 33, Exh. 23) Plaintiff accepted the backpay and benefits and the arbitrator approved the terms of the settlement. (DSOF ¶ 34, Exh. 1 at 88) On June 18, 2009, Plaintiff voluntarily went out on medical leave due to cancer. Plaintiff has not attempted to return to work since that date. (DSOF ¶ 35, Exh. 1 at 15-16) Plaintiff testified that she does not believe she has suffered any adverse employment action since going back on leave in June 2009. (DSOF ¶ 36, Exh. 1 at 159)

**II.  Legal Standard**

Summary judgment is appropriate when the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994); Fed.R.Civ.P. 56(a) ("[T]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). Substantive law determines which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Jesinger*, 24 F.3d. at 1130. In addition, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. The dispute must be genuine, that is, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322; *Citadel Holding Corp. v. Roven*, 26 F.3d 960, 964 (9th Cir. 1994).

The party opposing summary judgment may not rest upon the mere allegations or denials of the party's pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Lind Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); Fed.R.Civ.P.

56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials--including the facts considered undisputed--show that the movant is entitled to it[.]"). There is no issue for trial unless there is sufficient evidence favoring the nonmoving party. If the evidence is merely colorable or is not significantly probative, summary judgment may be granted. *Anderson*, 477 U.S. at 249-50. However, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his [or her] favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

Whatever facts which may establish a genuine issue of fact must *both* be in the district court's file and set forth in the response. *Carmen v. San Francisco Unified School District*, 237 F.3d 1026, 1029 (9th Cir. 2001); Rule 56(c)(3), Fed.R.Civ.P. The trial court

> may determine whether there is a genuine issue of fact, on summary judgment, based on the papers submitted on the motion and such other papers as may be on file and specifically referred to and facts therein set forth in the motion papers. Though the court has discretion in appropriate circumstances to consider other materials, it need not do so. The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found.

*Id.* at 1031.

**III. Analysis**

    **A. ADA**

In 1990, "Congress enacted the ADA 'to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities . . . .'" *Arizona ex rel. Goddard v. Harkins Amusement Enterprises, Inc*., 603 F.3d 666, 669 (9th Cir. 2010) (quoting 42 U.S.C. § 12101(b)(2)). Plaintiff's ADA claim must be analyzed under the ADA without consideration of the ADA Amendments Act ("ADAAA"). The ADAAA "does not apply retroactively" to employment actions taken before January 1, 2009, the effective date of the ADAAA. *Becerril v. Pima County Assessor's Office*, 587 F.3d 1162, 1164 (9th Cir. 2009). All

of the events underlying Plaintiff's claims occurred before the ADAAA's January 1, 2009 effective date. Accordingly, the pre-ADAAA version of the ADA applies to this case. *Id.*

The American with Disabilities Act (ADA) provides, in relevant part:

> No covered entity shall discriminate against a *qualified individual* on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment.

42 U.S.C. § 12112(a) (emphasis added). To establish a violation of the ADA, Plaintiff must establish that she was a qualified individual with a disability. *Id.*; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 477-78 (1999).[1] A "qualified individual" is an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. *Bates v. UPS*, 511 F.3d 974, 989 (9th Cir. 2007) (citing 42 U.S.C. § 12111(8)). Thus, to be a qualified individual, a person must have a disability. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of [the] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).

Thus, the application of the ADA depends, in part, on whether the plaintiff's asserted impairment is a "disability" within the meaning of the ADA; and this, in turn, depends on whether the asserted impairment "substantially limits" one or more major life activities of the plaintiff. 42 U.S.C. § 12102(2)(A). A plaintiff bears the burden of showing she is disabled under the ADA. *Thornton v. McClatchy Newspapers, Inc.*, 261 F.3d 789, 794 (9th Cir. 2001).

A major life activity is a function "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i); 42 U.S.C. § 12102(2)(A). Additionally, an impairment is not substantially limiting unless it prevents or severely restricts a plaintiff from performing activities that are of central

---

[1] This case has been overruled by the amendments to the ADA, effective January 1, 2009. ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (2008). As noted above, however, the amendments do not apply to this case. *Becerril*, 587 F.3d at 1164.

importance to most people's daily lives and the impairment is permanent or long-term. *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198 (2002).[2] Courts consider three factors in determining whether an individual is substantially limited in a major life activity: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact, or expected permanent or long-term impact of or resulting from the impairment. 29 C.F.R. § 1630.2(j)(2).

When, as in this case, the discrimination claim is based on a failure to accommodate, the plaintiff's *prima facie* case requires a showing that (1) she is disabled; (2) she is qualified for her job; and (3) a reasonable accommodation is facially possible and she was denied that reasonable accommodation. *Pickens v. Astrue*, 252 Fed. Appx. 795, 796 (9th Cir. 2007) (citing *Buckingham v. United States*, 998 F.2d 735, 739-40 (9th Cir. 1993)).

In the pending summary judgment motion, Defendant argues that it is entitled to summary judgment on Plaintiff's ADA claims because, by her own admissions, she was not disabled and, even if she was, Defendant did not deny her a reasonable accommodation.

The record supports Defendant's assertion that Plaintiff has consistently maintained that she was not disabled during her employment with Defendant. During her deposition, Plaintiff testified as follows:

> Q. [W]hat were you trying to tell [UPS]?
> 
> A. Okay. Wait a minute. What was I trying to tell [them]?
> 
> Q. Yeah.
> 
> A. That I was not disabled.
> 
> Q. And that's a position that you have maintained consistently with UPS; is that correct?
> 
> A. Correct.

(DSOF ¶ 37, Exh. 1 at 25)

---

[2] This case has been overruled, in part, by the amendments to the ADA, effective January 1, 2009. ADA Amendments Act of 2008, Pub.L. 110-325, 122 Stat. 3553 (2008). As noted above, however, the amendments do not apply to this case. *Becerril*, 587 F.3d at 1164.

- 8 -

Plaintiff further testified that:

A. I didn't believe I was restricted or disabled. Again.

Q. Got it.

A. I didn't believe I was, so why would I enter into [the interactive process]?

(DSOF ¶ 37, Exh. 1 at 60) Additionally, in her April 6, 1998 letter to UPS, Plaintiff stated that, "I am not disabled or have [sic] ever been." (DSOF ¶ 38, Exh. 17) Thus, by Plaintiff's own admission, she was not disabled, and thus was not entitled to ADA protection.

In her Response, while not directly arguing that Defendant regarded her as disabled, Plaintiff suggests that Defendant removed her from service based on her 40-pound lifting restriction, even though Plaintiff believed she could perform her job without restrictions. (Doc. 58 at 2, 12) "A person is 'regarded as' disabled within the meaning of the ADA if a covered entity mistakenly believes that the person's actual, nonlimiting impairment substantially limits one or more major life activities." *Murphy v. United Parcel Service, Inc.*, 527 U.S. 516, 521-22 (1999). In the context of the major life activity of working, "substantially limited" means:

> Significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities.

*Id.* at 523 (citing 29 C.F.R. § 1630.2(j)(3)(i)).

An impairment, such as Plaintiff's lifting restriction, which only disqualified her from her job as a Service Provider - as opposed to a broad range of jobs - is not considered substantially limiting. *Murphy*, 527 U.S. at 285; *see also Thompson v. Holy Family Hospital*, 121 F.3d 537, 540 (9th Cir. 1997) (finding that permanent 25-pound lifting restriction alone is not a disability under the ADA). The record reflects that UPS did not regard Plaintiff as significantly restricted in her ability to perform a broad range of jobs because UPS attempted to engage Plaintiff in the interactive process to identify an appropriate position. (DSOF ¶ 22-25, Exh. 1 at 20-21, Exhs. 15-17)

Plaintiff has not provided evidence to create a genuine issue of material fact regarding whether she had a condition which substantially limited any major life activity. "Even though factual allegations in a motion for summary judgment must be viewed in the light most

favorable to the non-moving party, summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard University of California, at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex*, 477 U.S. at 322). Defendant carried its burden as moving party under summary judgment standards. Plaintiff's obligation, to avoid summary judgment, is to cite particular items of evidence she contends create triable issues of fact. Plaintiff has not provided such evidence in this case.

### B. Discrimination Claim is Time-Barred

As previously stated, Plaintiff alleges she was discriminated against in violation of the ADA when UPS took her out of service in the Fall of 2006, and failed to engage in the interactive process. Even if Plaintiff were a qualified individual under the ADA, her discrimination claim fails. Plaintiff's claim is time-barred because she waited more than 90 days after receiving her right to sue from the EEOC before filing this lawsuit.

To bring a claim under the ADA, a claimant must exhaust administrative remedies by filing a charge of discrimination with the EEOC within 300 days of the alleged unlawful employment practice. *Surrell v. California*, 518 F.3d 1097, 1104 (9th Cir. 2008) (citing 42 U.S.C. § 2000e-5(e)(1)). Plaintiff satisfied that requirement when she filed her December 21, 2006 EEOC charge, alleging that UPS had discriminated and retaliated against her by taking her out of service on October 31, 2006, and failing to engage her in the interactive process. (DSOF ¶ 40, Exh. 2) Plaintiff's EEOC charge was dismissed. On June 26, 2007, she was issued a notice of right to sue, which stated that a lawsuit under the ADA must be filed within 90 days of receipt of the notice or her right to sue based on her charge would be lost. (DSOF ¶ 41, Exh. 3); 42 U.S.C. § 2000e-5(f)(1) (claimant must file suit against a respondent within 90 days of obtaining a Notice of Right to Sue letter from the EEOC or her claims are time-barred.). This lawsuit was not filed until November 30, 2009, well beyond the 90-day period. (Doc. 1) Thus, Plaintiff's claims that UPS placed her out of service and failed to engage her in the interactive process in the fall of 2006 are time-barred.

In her response, Plaintiff argues that UPS violated the ADA by continually refusing to engage Plaintiff in the interactive process from 2006 until she was returned to service in January 2009. (Doc. 58 at 11) Pursuant to the continuing violation doctrine, Plaintiff argues the Court should be allowed to consider her time-barred claims "because they represent an ongoing unlawful employment practice." (Doc. 58 at 11) (quoting *Anderson v. Reno*, 190 F.3d 930, 936 (9th Cir. 1999)). However, the Ninth Circuit has held that the continuing violation doctrine is not available in cases involving employment termination. *Grimes v. City and County of San Francisco*, 951 F.2d 236, 238 (9th Cir. 1991). "[I]t is the continuity of the employment relationship that sustains the violation, and when that relationship is severed [i.e., when employment is terminated], the violation ceases." *In re Consolidated Pretrial Proceedings in the Airline Cases*, 582 F.2d 1142, 1149 (7th Cir. 1978). In this case, Plaintiff's employment was terminated on December 26, 2006, and Plaintiff was not reinstated as a UPS employee until after the arbitrator's December 31, 2007 decision. (DSOF ¶¶ 15, 19) Thus, there is no continuity between UPS's alleged failure to accommodate Plaintiff before December 26, 2006 and UPS's alleged failure to accommodate her after December 31, 2007. Accordingly, Plaintiff's claims relating to UPS's alleged failure to accommodate her in 2006 and 2007 are time-barred.

### C. Plaintiff's Retaliation Claim

Plaintiff also alleges that UPS retaliated against her in January 2008 by failing to engage in the interactive process and return Plaintiff to work. (DSOF ¶ 4; doc. 58 at 12-13) As Defendant argues, Plaintiff's retaliation claim fails. As an initial matter, because Plaintiff is not a qualified individual with a disability, UPS was not obligated to engage her in the interactive process. *Broussard*, 192 F.3d at 1258 (finding that "[a]ny failure by the University to engage in an interactive process with Broussard is negated by the fact that she is not disabled under the terms of the ADA."). Moreover, even though Defendant was not obligated to do so, the record reflects that UPS tried to engage Plaintiff in the interactive process but she rejected those attempts because she was not disabled. Additionally, UPS has not taken any adverse employment action against Plaintiff.

As previously discussed, Plaintiff consistently maintained that she is not, and has never been, disabled. She testified that she rejected UPS's attempted to engage her in the interactive process. (DSOF ¶ 26; Exh. 1 at 22-25, 60) After Dr. Vasquez's January 23, 2008 evaluation of Plaintiff, which resulted in a 40-pound lifting restriction, UPS made several attempts to obtain information from Plaintiff about her condition in order to identify possible accommodations. (DSOF ¶ 22, 24, Exh. Exhs. 15, 16) In her response, Plaintiff acknowledges that UPS contacted her several times in March 2008 to obtain information about her conditions. (Doc. 58 at 8-9) The Ninth Circuit has instructed employers to take such action during the interactive process. In *Barnett v. U.S. Airways*, 228 F.3d 1105 (9th Cir. 2005), the Ninth Circuit stated that "[e]mployers should meet with the employee who requests an accommodation, request information about the condition, and what limitations the employee has." *Id.* at 1115 (internal quotations omitted). Plaintiff admits that the first step in the interactive process is for UPS to gather medical information about her condition. (DSOF ¶ 23, Exh. 1 at 20-21)  Plaintiff, however, declined to participate in the interactive process.  Rather, she sent UPS a letter refusing to provide information about her condition because she was not disabled. (DSOF ¶ 25, Exh. 17) During her deposition, Plaintiff confirmed that after Dr. Vasquez imposed a 40-pound lifting restriction in 2008, she refused to participate in the interactive process because she "didn't believe [she] was restricted or disabled." (DSOF ¶ 37, Exh. 1 at 60) In her response, Plaintiff again acknowledges that she rejected UPS's attempts to engage her in the interactive process because she believed she was not disabled. (Doc. 58 at 9 citing PSOF ¶ 23) During her deposition, Plaintiff testified as follows:

> Q. That's what you were saying is: They haven't entered into the interactive process with me.  I could be accommodated with this restriction.  That's what you were saying; is that correct?
>
> A. If that was [Dr. Vasquez's lifting] restriction.
>
> Q. Okay.
>
> A. I didn't believe I was restricted or disabled.  Again.
>
> Q. Got it.
>
> A. I didn't believe I was, so why would I enter into [the interactive process]?

- 12 -

(DSOF ¶ 26, Exh. 1 at 60)  When an employee fails to provide sufficient medical evidence, the employer has no further duty to engage in the interactive process. *Allen v. Pacific Bell*, 348 F.3d 1113, 1115 (9th Cir. 2003); *Templeton v. Neodata Servs., Inc.*, 162 F.3d 617, 619 (10th Cir. 1998) (stating that employee's failure to provide medical information precluded her from claiming that the employer failed to provide reasonable accommodation); *Steffes v. Stepan Co.*, 144 F.3d 1070, 1073 (7th Cir. 1998) (noting that when the employee "fail[s] to hold up her end of the interactive process by clarifying the extent of her medical restrictions, [the employer] cannot be held liable for failing to provide reasonable accommodations.") Here, the record reflects that Plaintiff was unwilling to participate in the interactive process. Despite UPS's attempts to engage Plaintiff in the interactive process, she refused to provide any medical information or discuss possible accommodations.  Accordingly, UPS had no further obligation to engage in the interactive process, and cannot be held liable for failing to provide a reasonable accommodation. *Allen*, 348 F.3d at 1115; *Steffes*, 144 F.3d at 1073.

Plaintiff's retaliation claim also fails because UPS has not taken any adverse employment action against her. To establish a *prima facie* case of retaliation, Plaintiff must show she engaged in a protected activity, she suffered an adverse employment action, and there was a causal link between her protected activity and the adverse employment action. *Brooks v. City of San Mateo*, 229 F.3d 917, 928 (9th Cir. 2000). An adverse employment action is adverse treatment that is based on a retaliatory motive and is reasonably likely to dissuade someone from engaging in a protected activity. *Ray v. Henderson*, 217 F.3d 1234, 1244 (9th Cir. 2000). Here, the only "adverse action" Plaintiff complains of is UPS's alleged failure to engage in the interactive process and reinstate her employment. (Doc. 32)  However, the record reflects that UPS tried to engage Plaintiff in the interactive process, but Plaintiff terminated the process. There is no dispute that, when Plaintiff finally agreed to take a functional capacity examination, which she passed without restrictions, she was promptly reinstated to work. (DSOF ¶¶ 31, 32) Additionally, after she returned to work, Plaintiff was paid backpay and benefits for the time she was out of work after UPS terminated her employment in December 2006. (DSOF ¶ 33)

Defendant's attempts to engage Plaintiff in the interactive process, and its payment of backpay and benefits for the time she was out of work, are not adverse employment actions.

Finally, Plaintiff's retaliation claim fails because there is no causal connection between her protected activity - her 2006 labor grievance and EEOC charge - and the adverse employment action that she alleges - UPS's attempts to engage her in the interactive process. To establish a "causal link," the temporal proximity between the employer's knowledge of protected activity and the adverse employment action must be "very close." *Clark County School District v. Breeden*, 532 U.S. 268, 273-74 (2001); *Richmond v. Oneok, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (finding a 3-month period to be insufficient); *Hughes v. Derwinski*, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (finding a 4-month period to be insufficient). Here, approximately 16 months passed between Plaintiff's 2006 grievance and the EEOC charge and the interactive process, that UPS attempted in April 2008, which greatly exceeds *Breeden's* "very close" temporal proximity requirement. There is no causal link between Plaintiff's protected activity in 2006 and UPS's attempt to engage her in the interactive process over a year later. For the foregoing reasons, Plaintiff's retaliation claim fails.

**III. Summary**

For the reasons set forth above, Plaintiff has not raised a genuine issue of material fact as to any of her claims. Accordingly, UPS is entitled to summary judgment as a matter of law on all of Plaintiff's claims.

Accordingly,

**IT IS ORDERED** that Defendant's Motion Summary Judgment, doc. 51, pursuant to Rule 56, Fed.R.Civ.P., is **GRANTED**. The Clerk of Court is kindly directed to enter judgment in favor of Defendant and terminate this case.

Dated this 22nd day of September, 2011.

Lawrence O. Anderson
United States Magistrate Judge